I.    **Petitioner's detention is lawful and does not violate due process**

    A.    **Petitioner is an "applicant for admission" and therefore subject to mandatory detention under Section 1225(b)(2)**

Petitioner is properly detained as an applicant for admission subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(2)(A). *Buenrostro-Mendez v. Bondi*, --- F.4th ---, 2026 WL 323330 (5th Cir. Feb. 6, 2026) (holding habeas petitioners in removal proceedings were subject to mandatory detention under 28 U.S.C. § 1225(b)(2) because they were present in the United States without being admitted or paroled, despite having entered illegally many years ago); *Avila v. Bondi,* --- F.4th ---, 2026 WL 819258 (8th Cir. Mar. 25, 2026) (same); *Morales v. Noem,* No. 25-cv-62598, 2026 WL 236307 at *8 (S.D. Fla. Jan. 29, 2026) (Singhal, J.) (concluding that a habeas petitioner who entered the United States without inspection in 2004 is still an "applicant for admission" whose detention is governed by 8 U.S.C. § 1225(b)).

The Fifth Circuit in *Buenrostro-Mendez* recognized that "[s]ince DHS began to detain unadmitted aliens under § 1225(b)(2)(A), well over a thousand aliens have filed habeas corpus petitions seeking bond hearings[] [and,] [i]n most of these cases, the district court found in favor of the petitioner." *Id.* at *3. Nevertheless, the court of appeals concluded that presence without admission renders an individual like Petitioner to be both an "applicant for admission" and "seeking admission" under 8 U.S.C. § 1225(b)(2) and therefore subject to mandatory detention—regardless of how much time the individual has been present in the United States. *Buenrostro-Mendez*, at *4-9. The Eighth Circuit reached the same conclusion shortly thereafter. *Avila*, 2026 WL 819258 at *6.

"As with any question of statutory interpretation, [the] analysis begins with the plain language of the statute." *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009) (citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)). Section 1225(a)(1) defines an "applicant for admission" as an

"alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival)." 8 U.S.C. § 1225(a)(1); *see Buenrostro-Mendez,* at *2 ("an alien's status as an applicant for admission does not turn on where or how the alien entered the United States"); *Matter of Velasquez-Cruz*, 26 I&N Dec. 458, 463 n.5 (BIA 2014) ("[R]egardless of whether an alien who illegally enters the United States is caught at the border or inside the country, he or she will still be required to prove eligibility for admission.").

By its very definition, the term "applicant for admission" includes two categories of aliens: (1) arriving aliens, and (2) aliens present without admission. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (explaining that "an alien who tries to enter the country illegally is treated as an 'applicant for admission'"); *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012) ("Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission."); *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 523 (BIA 2011) (stating that "the broad category of applicants for admission … includes, *inter alia*, any alien present in the United States who has not been admitted.").

All aliens who are applicants for admission "shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3); *see also* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port of entry [POE] when the port is open for inspection."). An applicant for admission at a United States POE "must present whatever documents are required and must establish to the satisfaction of the inspecting officer that the alien is not subject to removal … and is entitled, under all of the

applicable provisions of the immigration laws … to enter the United States." 8 C.F.R. § 235.1(f)(1); *see also* 8 U.S.C. § 1229a(c)(2)(A) (explaining that an applicant for admission has the burden to establish that he or she is clearly and beyond doubt entitled to be admitted and is not inadmissible under 8 U.S.C. § 1182 in removal proceedings pursuant to § 1229a). "An alien present in the United States who has not been admitted or paroled or an alien who seeks entry at other than an open, designated [POE] … is subject to the provisions of [8 U.S.C. § 1182(a)] and to removal under [8 U.S.C. § 1225(b)] or [8 U.S.C. § 1229a]." 8 C.F.R. § 235.1(f)(2).

Petitioner entered the United States without inspection; Petitioner is, therefore, an alien present in the United States without admission or parole and, consequently, an applicant for admission—even though he appears to have resided in the country for several years. *See Buenrostro-Mendez*, 2026 WL 323330 at *2, *4-5. An alien's status as an applicant for admission does not turn on where or how the alien entered the United States; an alien present without inspection or admission is necessarily an "applicant for admission" and "seeking admission," as contemplated in 8 U.S.C. § 1225(b)(2).

As the Fifth Circuit confirmed in *Buenrostro-Mendez*, this construction is consistent not only with the plain language of § 1225(b)(2), but also with the Supreme Court's decision in *Jennings v. Rodriguez,* 583 U.S. 281 (2018), and subsequent caselaw post *Jennings*. In *Jennings*, the Supreme Court explained that § 1225(b) applies to all applicants for admission, noting that the language of § 1225(b)(2) is "quite clear" and "unequivocally mandate[s]" detention. 583 U.S. at 300, 303.

Additionally, in *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025), the BIA held that an alien who unlawfully entered the United States between POEs, was arrested and detained without

a warrant while arriving, and was previously released from DHS custody pursuant to an 8 U.S.C. § 1182(d)(5)(A) parole is detained under § 1225(b) upon re-detention. 29 I&N Dec. at 70-71. This ongoing evolution of the law makes clear that all applicants for admission in various procedural postures are subject to detention under § 1225(b). *Cf. Niz-Chavez v. Garland*, 593 U.S. 155, 171 (2021) (stating that "no amount of policy-talk can overcome a plain statutory command"); *see generally Florida v. United States*, 660 F. Supp. 3d 1239, 1275 (N.D. Fla. 2023) (explaining that "the 1996 expansion of § 1225(b) to include illegal border crossers would make little sense if DHS retained discretion to apply § 1226(a) and release illegal border crossers whenever the agency saw fit").

**B.      Section 1226 does not support Petitioner's argument**

Petitioner's reliance upon, and reference to, 8 U.S.C. § 1226 is unavailing. As shown above, his detention is controlled by Section 1225(b)(2), not Section 1226. *See Avila,* 2026 WL 819258 at *6; *Buenrostro-Mendez*, 2026 WL 323330 at *2, *4-5; *Morales*, 2026 WL 236307 at *3-8.

Sections 1225 and 1226 are separate statutory provisions that provide independent bases for detention and, generally, apply to different groups of aliens. *Id.* Section 1226(a) is the applicable detention authority for aliens who have been admitted and are subject to removal proceedings under § 1229, and it does not impact the directive in § 1225(b)(2)(A) that "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceedings under [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A). Section § 1226(a) "applies to aliens already present in the United States" and "creates a default rule for those aliens by permitting—but not requiring—the [Secretary] to issue warrants for their arrest and detention pending removal

proceedings." *Jennings*, 583 U.S. at 289, 303; *Q. Li*, 29 I&N Dec. at 70; *see also M-S-*, 27 I&N Dec. at 516 (describing 8 U.S.C. § 1226(a) as a "permissive" detention authority separate from the "mandatory" detention authority under 8 U.S.C. § 1225). As the Fifth Circuit observed in *Buenrostro-Mendez*, Section 1226(a) "does work independent from § 1225(b)(2)(A) because only § 1226(a) applies to admitted aliens who overstay their visas, become deportable on many different grounds, or were admitted erroneously due to fraud or some other error." *Buenrostro-Mendez*, 2026 WL 323330 at *7.

Generally, such aliens may be released on bond or their own recognizance, also known as "conditional parole." 8 U.S.C. § 1226(a); *Jennings*, 583 U.S. at 303, 306. Section 1226(a) does not, however, confer the *right* to be released on bond; rather, both DHS and immigration judges have broad discretion in determining whether to release an alien on bond as long as the alien establishes that he or she is not a flight risk or a danger to the community. *See* 8 C.F.R. §§ 236.1(c)(8), 1236.1(c)(8); *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006); *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999). To interpret § 1225(b)(2)(A) as not applying to all applicants for admission would render it meaningless. As explained above, Congress expanded § 1225(b) in 1996 to apply to a broader category of aliens, including those aliens who crossed the border illegally. There would have been no need for Congress to make such a change if § 1226(a) was meant to apply to aliens present without admission.

**B. Applicants for admission may only be released from detention on parole.**

DHS has the exclusive authority to temporarily release on parole "any alien applying for admission to the United States" on a "case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5); *see* 8 C.F.R. § 212.5(b). In *Jennings*, the Supreme Court placed significance on the fact that § 1182(d)(5) is the specific provision that

authorizes temporary release from detention under § 1225(b). 583 U.S. at 300.

Parole, like an admission, is a factual occurrence. *See Hing Sum*, 602 F.3d at 1098; *Matter of Roque-Izada*, 29 I&N Dec. 106 (BIA 2025) (treating whether an alien was paroled as a question of fact). The parole authority under 8 U.S.C. § 1182(d)(5) is "delegated solely to the Secretary of Homeland Security." *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 261 (BIA 2010); *see* 8 C.F.R. § 212.5(a). Thus, neither the BIA nor immigration judges have authority to parole an alien into the United States under § 1182(d)(5). *Castillo-Padilla*, 25 I&N Dec. at 261; *see also Matter of Arrabally and Yerrabelly*, 25 I&N Dec. 771, 777 n.5 (BIA 2002) (indicating that "parole authority [under 8 U.S.C. § 1182(d)(5)] is now exercised exclusively by the DHS" and "reference to the Attorney General in [8 U.S.C. § 1182(d)(5)] is thus deemed to refer to the Secretary of Homeland Security"). Lastly, because DHS has exclusive jurisdiction to parole an alien into the United States, the manner in which DHS exercises its parole authority may not be reviewed by an immigration judge or the BIA. *Castillo-Padilla*, 25 I&N Dec. at 261; *see Matter of Castellon*, 17 I&N Dec. 616, 620 (BIA 1981) (noting that the BIA does not have authority to review the way DHS exercises its parole authority).

### C.      Under Loper Bright, the statute controls, not prior agency practice

Any argument that prior agency practice of applying Section 1226(a) to aliens like Petitioner, is unavailing because under *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 411 (2024), the plain language of the statute and not prior agency practice controls. In overturning *Chevron* deference, the Supreme Court recognized that courts often change precedents and "correct[] our own mistakes." *Loper Bright*, 603 U.S. at 411. *Loper Bright* overturned a decades old agency interpretation of the Magnuson-Stevens Fishery Conservation and Management

Act that itself predated IIRIRA by twenty years. *Id.* at 380. Thus, longstanding agency practice carries little, if any, weight under *Loper Bright*.

### D.      Petitioner's detention does not violate due process

Petitioner also argues his mandatory detention violates his due process rights. Not so. First, Petitioner's reliance on *Zadvydas v. Davis*, 533 U.S. 678 (2001) is misplaced. *Zadvydas* relates to *post*-order of removal detention under 8 U.S.C. § 1231—not at all at issue here. But even if the *Zadvydas* framework did apply to this case, then the Petition would necessarily be premature as Petitioner was detained for less than the presumptively reasonable six-month removal period at the time the Petition was filed; *see also Akinwale v. Ashcroft*, 387 F.3d 1050, 1051-52 (11th Cir. 2002) (holding the six-month presumptively reasonable removal period must have expired at the time a habeas petition is *filed* for a petitioner to state a claim under *Zadvydas*).

Rather, as noted in *Morales*, the Supreme Court's decision in *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)—a mandatory detention case—provides the best constitutional framework for analyzing Section 1225. *Morales*, 2026 WL 236307 at *9. In *Demore*, the Supreme Court held, among other things, that the government need not conduct individualized bond hearings to determine individualized flight risk for aliens subject to mandatory detention; instead, it may generally mandate detention of aliens in removal proceedings to combat flight without offending the constitution. *Demore*, 538 U.S. at 528 (upholding section 1226(c)'s mandatory-detention-without-bond scheme against challenge that alien detainees had a due process right to individualized bond hearings to determine flight risk). Moreover, the *Demore* court held, broadly, that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Id.* at 523.

Applying *Demore* (and the constitutional considerations at issue in *Zadvydas*, although noting that case to be less instructive), the *Morales* court ruled that (1) Petitioner's *five-month detention* was shorter than the six months found permissible in *Demore*; and (2) "Petitioner's detention is part of the deportation process and therefore does not—absent some further showing— amount to a deprivation of due process." *Morales*, 2026 WL 236307 at *9.

So too, here. Like the petitioner in *Morales*, Petitioner has not sufficiently alleged or shown a constitutional violation. His allegations in this regard are generally vague and conclusory. He's also been detained for less than five months. But, in any event, *Demore* instructs that no due process violation has occurred here.

## CONCLUSION

Because Petitioner's detention is lawful, constitutional, and, in fact, mandated by Section 1225(b)(2), Respondents request that the Court deny all relief sought in the Petition.

Respectfully submitted,

JASON A. REDING QUIÑONES
UNITED STATES ATTORNEY

By:   *Zakarij N. Laux*
ASSISTANT U.S. ATTORNEY
Florida Bar No. 93784
United States Attorney's Office
99 N.E. 4th Street, Suite 500
Miami, Florida 33132
(305) 961-9053
Zakarij.Laux@usdoj.gov

*Counsel for Respondents*